I'd like to reserve two minutes for rebuttal. You may. Thank you. As the Court knows, this is a government appeal from a single judgment following the Court's remand in Carter I, after which the District Court dismissed the indictment that charged Mr. Carter with firearms possession following a conviction for a misdemeanor crime of domestic violence. In light of this Court's subsequent Guaizin opinion and the Supreme Court's Guaizin opinion, dismissal of the indictment was clearly wrong. With Guaizin disposing of the only squarely issue presented in this government appeal in the government's favor, I suspect we're here to talk about procedural posture and remedial options. And with that in mind, we would ask that the Court vacate the District Court's order dismissing the indictment in light of Guaizin and order reinstatement of the correct original indictment, whether by reversing Carter I on that issue or other means, and decline to address Mr. Carter's sentencing guideline issue, which has now been rendered moot, given that he has served his entire year-and-a-day sentence. And indeed, he did so entirely consecutively with a new state term that was imposed because he continued to traffic oxycodone while on bail pending appeal in Carter I. So he was picked up on that new state charge, got about three years, and worked out a deal where he... Isn't he still on supervised release? No, he's not. No? That's done too? The experience is done for the state? For us. Our supervised release term. Isn't he still serving that? He ordinarily would have been. He would have started that, my understanding is, March 2016, when he got out of state custody for his three-year term. But because in Carter I, the Court had vacated his conviction. And judgment, he has not yet started to serve any federal term of supervised release. And frankly, the state prosecutors in our office, experienced ones, former, believe the reason he's not on state probation, which is where I thought you were going, Judge Thompson, was because they all knew he would be serving a two-year federal term where the resources are so much greater to supervise someone and do drug testing and rehabilitation, et cetera. So he's currently not on any term of supervision. And we maintain that the Court, pursuant to an order reinstating the original correct judgment in its entirety, would then subject Mr. Carter to the two-year term of supervision. He's already served the year-and-a-day sentence, as we indicated. Mr. Carter seems to think he's now entitled, notwithstanding Boise, which came out against his steadfast litigation positions throughout, that he's now entitled to sort of start anew and go back on a hypothetical remit and raise speedy trial act issues. I think he talked about a motion for statute of limitations. And we submit that, in light of Boise, to give him that windfall, not only of a break from supervised release, having already gotten to serve the custodial term entirely, concurrently with this new state term, we give him, again, sort of the ability to use Boise as a sword to cut through when, here, in light of Boise, the Carter 1 order vacating the original correct judgment was erroneous. And that... Help me on this. He appealed on the Boise and Castleman issue, but he also had a sentencing appeal. He said that this was a gun collection, so I'm within the exception, so those points shouldn't have been covered against me. And the panel that heard that first one ruled for him, sort of, on the first issue, and then said, so we don't need to reach the sentencing issue. Now it's turned out, on sort of instant replay, that we've decided it was wrong on the Boise and Castleman, you were right, so we're back to, what about a sentencing issue? And, as I understand your argument, it's moot, but if the court, if we were of the view, eventually, or the court below were of the view, that this was a gun collection within the exception, isn't it possible the term of supervised release could be shorter than it now is under the prior sentence, hence there is no mootness? Carter raised, Castleman came out after, after we had argued the sentencing guideline issue, actually in terms of timing, and it was remanded on the statutory question alone, and yes, the only issue we discussed during the July 2013 oral argument was the sentencing guideline issue, and we maintain that Judge Segal got it right, that Carter failed to satisfy his burden, and I can go through those reasons again here, but But suppose he's wrong. Right. Is that issue moot? I think arguably it's moot, yet there is case law, Judge Keada, where if, one is, this is a government appeal from a single judgment, to the extent the court were to reverse Carter one and revisit the sentencing issue through that vehicle, perhaps, there is case law suggesting that because he would remain subject to the two-year term of supervision, it might not be moot. We submit that, for all of the reasons we stated in our briefs and in our argument, and the case law overwhelmingly supports, that pawning firearms for cash does not fit in with the narrow- But that's the merits, let's assume you're wrong on the merits, because, I mean, he inherits a gun collection, he pawns it, but keeps it, it's got emotional value, doesn't do anything with it, doesn't load it, apparently, let's assume he's right on that, if that would, arguably, result in a shorter term of supervised release, then I don't see the mootness issue. We would, again, on the merits, I'll assume the merits, yes, we would maintain that the majority of circuits have held otherwise, but if the court were to find that, and there's case law on both ways, that this is, we would argue this is somewhat speculative, that the two-year term of, I note that the two-year term, I note that at sentencing, Mr. Billings asked for a three-year term of supervised release, told the court that Mr. Carter would benefit from supervision, and he got two. So he asked for the statutory maximum, got two years. The guideline range, the advisory range for supervised release, if Carter had prevailed on his sentencing guideline issue, is zero to three months. The guideline range for, if a court imposes a sentence of exceeding one year, here it was 12 and a day, is one to three years. So either way, the two-year term of supervision that Mr. Carter got, and is never challenged, not in the district court, not in direct appeal, not even upon remand, for the first time in this government appeal, would remain well within that range, to the extent the court was assessing the degree of prejudice, or the likelihood of a lower term of supervision upon remand. We submit that it's also unlikely, given Mr. Carter proceeded while on bail, pending appeal, and Carter won, to commit new drug trafficking crimes. If we were to send him back for resentencing, what's your view on whether he'd be exposed to a longer sentence, as of subsequent events, that now would precede, rather than follow, the ultimate sentence? There is a recalculation issue of his criminal history category. He could come out to be a four, rather than a three, and it would depend on what the other issues. But to the extent that he disagreed with the district court, and disagreed with the government and the other circuits that have held that Mr. Carter's conduct would take him out of this very narrow exception, and found that it was possible that Judge Singel might impose, therefore, a lower term of supervised release, that certainly is within the district court's, in terms of the range. The exposure, if, I think the exposure, the guideline range was 12, I'm sorry, was 18 to 24 months, the category for it would now be 24 to 30, but if he prevailed on his guideline issue, it dropped significantly with that. Would you agree with me that this is a very confused area of the law? Which, meaning, it, there's... This entire case? Yes, Your Honor, this is, yes. Isn't there a vagueness issue here? It hasn't been raised, I know, but it seems to me that I find it difficult to see how a regular private citizen can understand what he can be charged with, or be responsible for. I just, I guess I would backtrack. When you said this whole case, Judge Joy, I thought you were talking about the procedural posture of this case, which is somewhat odd, but no, I think this court and the Supreme Court has repeatedly rejected those sort of non-textual arguments that the statutes are void for vagueness, that the doctrine of constitutional doubt or the rule of lenity should apply. This court has repeatedly, with respect to 922 G9, and the Supreme Court has repeatedly, with respect to 922 G9, rejected those arguments. I do agree that the procedural posture of this case has been convoluted. I think Mr. Carter has made it increasingly convoluted, and I don't think the delay at all, three years of which he was in jail on estate crimes, has caused the prejudice that would warrant bringing the equitable arguments that Mr. Carter begs, or these void for vagueness non-textual arguments that have been rejected. Thank you. You're welcome. Thank you. Mr. Billings, good morning. Good morning, Your Honor. Your Honor. I'd also like to address the scope of a remanding order in this case. We're asking the court to simply reinstate the indictment if it were to find that necessitated by the Voisin opinion, and not to do as the government requests, which is to go back through the district court's dismissal, bypass the initial panel decision that vacated the judgment and vacated the ruling on the motion to dismiss, and travel all the way back to the district court judgment in 2012 to reinstate that judgment. I think that that does a disservice to the prior panel, which is at the same authoritative level as this panel. Mr. Billings, could you help me with a practical point? If I'm following this correctly, the maximum beneficial upside to your client of going that route if everything went perfectly for your client is the term of supervised release might be shortened. Absolutely. And there's no other benefit. If we go that route, is your client exposed, and we would leave the sentencing not final, which would require resentencing, would that expose your client to, in fact, a longer term of not just supervised release, but incarceration based on the potential for the calculation of a higher criminal history score through reapplication of the guidelines to his subsequent crime? I see the point, Your Honor. We would oppose that at all levels. We oppose it now. We would suggest that at the time of the commission of his criminal activity, that was not a factor, and it's now past the time of conviction and judgment, and it shouldn't apply. However, if it were to be found to apply, I think that would only add three criminal history points. With the application of the sporting exception, I would venture the opinion of this Court, he'd still be in the zero to six rank. So I really don't think it would materially affect. Ms. Bunker told us that last time around his, and I don't recall if you were at the trial council or not, Mr. Billings, but that there was actually a request for longer supervised release, because sometimes the terms of the supervised release does provide some structure that is helpful to someone. I was trial counsel, and I don't recall the request, but I immediately instinctively understand that I would have done that in an effort to persuade the Court that the term of incarceration he was complaining wasn't necessary, and that the Court would have control in Mr. Carter's life by virtue of the supervised release, in an effort to try to persuade the Court to go to the zero to six and not impose any imprisonment. But now if you're back on resentencing, it's fair game what the sentence will be. You're pushing in the opposite direction. If you ask for the only reason you're there is you're hoping you get the supervised release reduced from two years, the Court may accommodate that and accept the logic of your earlier argument and enhance the sentence. Perhaps, Your Honor, but I don't think so. A lot of water under the bridge here. A lot of time has passed. The government almost seems to suggest that Mr. Carter got some kind of manipulative advantage about the concurrence of his sentences with the state court. Well, what really happened is the state court allowed his bail to be reduced to PR so that he went into federal custody, so he could serve that time first. They imposed their sentence knowing that he was going to be serving that federal time. So they sculpted out everything that they wanted in terms of additional time so that he'd serve three years after he did his one year with the feds. He didn't miss out or manipulate his way out from underneath anything. He got exactly what Judge Singel intended and exactly what the state court judge intended. We've asserted that there's plenty of case law that says the restraints on liberty that are associated with supervised release are enough to avoid the mootness issue. If he's got a substantive sentencing challenge to the righteousness of that sentence being imposed, it's not moot. It's not moot now. He never went on to supervised release, so he has the entirety of that two year period of supervision and restraint on his liberty. His mobility, his residence, his associations, all of those things are infringements on liberty that he has the right to have that sentencing issue be heard and challenged. And we would argue that it's not true to assert that we never challenged supervised release. It was part and parcel of our sentencing argument that we brought under the sporting and collection exception that if we prevailed on that, that we were asserting and assert now that his term of supervised release may have been significantly reduced. If he ended up at a zero to six, he might have gotten no time in six months of supervision, nine months of supervision, maybe a year of supervision, so that, you know, all of that was part of what we initially brought before this court. But your client is fully informed and understand that if we send the matter back for resentencing that he nonetheless has exposure to a greater sentence and he's willing to assume that risk? He is, yes, Your Honor. My authority was to try to attempt to negotiate this before we even got to the state's hearing. And I've done yeoman's service in going to the United States Attorney's Office to try to reach an agreement and nullify the necessity for this appeal. We've come before this court recognizing the authority of the Boisina's decision in the Supreme Court. That's not an issue, at least not prospectively. We made arguments that we felt we needed to make here, but we tried to bring this to him. But he's aware of that risk, but also wants the sporting exception issue heard because of the facts. He received these from his father. He hunted with one of these guns himself in their family traditional Thanksgiving Day hunts, the Remington he used. The others were hunting rifles. He sold some off when his father first died, but, I mean, he lost money every single time he redeemed these guns. Why would he do that if he didn't intend to want to try to keep them? Mr. Carter is kind of a scuffler financially. He gets along not well. And when he can't pay his bills, he resorted to taking his property that he lawfully possessed and he tried to get some money out of it, but went back and paid for them at a higher price. So I think that's evidence of the collection aspect of this. So we wanted that issue heard and we still stand by that and believe that we're willing to take that risk on remand. And none of the cases that the government has cited suggest the proposition that they reflect that they stand for in their reply brief. They're suggesting that the second appellate panel, you, can reinstate the district court's judgment and just ignore the vacatur that came out of the first panel. And it's almost treating it as if it wasn't there and substituting your authority on that, which was an appropriate and proper decision at the time it was made, given the binding authoritative dicta coming out of Castleman. Yes, it was subsequently changed by the Supreme Court and now that's authoritative, but at the time you had Castleman, you had the vacating of the Armstrong judgment, and then the district court had the guidance from this court. It would have been shocking if Judge Singel had not dismissed three different district court judges. Judge Torson, Judge Woodcock, Judge Singel, all dismissed assaults based on recklessness as crimes of violence. But the government has cited Bell as a case that suggests you have the authority to ignore that first panel, but that was a case that held that a remand doesn't automatically rejuvenate the entire case. And that's true, but in here the remand was a limited one for the court to consider Shepard documents, and the government wasn't able to show that there was intention. Do we even have before us, we can't get at this issue on the Peel, the collection issue? I think this panel, if it were perhaps the identical panel, it's missing Judge Steik, I understand. But we don't have the affidavit, we don't have... You don't have the record. I mean, it's before this court, it was argued before this court, but it's not in this docket number and presently here today. And there are other cases. The Castillo case, which discusses the mandate rule that was cited by the government in their reply, requires the district court to affect the mandate and no more. Well, the mandate in this case was the one from the first panel that directed them simply to consider the Shepard documents and see if the government could show intentional knowing conduct. We argue that it's implicit in Carter 1 that there would not have been a vacation of the judgment and a remand unless the court... Well, I could finish the point, Your Honor. Yes, you can finish the point. If the court contemplated that there were no alternative... collection of allegations that could trigger a misdemeanor crime of domestic violence, there would be no reason to vacate the judgment. As a matter of law, all of the alternatives would have satisfied misdemeanor crime of domestic violence. Implicit in the decision to vacate and remand for reconsideration is an acknowledgement that there must be at least one alternative among all of them that would result in the dismissal. And that's what Judge Singleton found. Thank you, Your Honor. Thank you. Ms. Bunker? Thank you, again, Your Honor. First of all, the law is abundantly clear. If there was a case for the Carter 1 holding based on or rulings based on Supreme Court dicta, however there is no explicit Supreme Court holding that shows that the Carter 1's vacatur of the original judgment was erroneous. So I respectfully disagree with Mr. Billings that this panel cannot, in light of Thoisine from the Supreme Court, a case directly on point, cannot reverse Carter 1. That gets us to whether through that reversal the court can revisit the previously bypassed sentencing issue, guideline issue. We maintain the court's going to go, if you get that far, the court's going to go read the cases. And the 5th Circuit in LaLaukes, the 6th Circuit in Clingin, the 11th Circuit in Caldwell, both this court in Cousins as well and the 7th Circuit in Gresso interpret that guideline for obvious reasons, because it's dealing with prohibited persons, as a very narrow exception. And we maintain for the reasons stated in those cases, not only were there compelling facts showing, and there are also cases we cited, Baker at the 6th Circuit, Eskeen's opinion that merely holding onto a gun for sentimental purposes does not make one a hunter or a collector. And the case law is pretty good on that. Does the record before us on this appeal allow us to decide that, or would we have to send that back to the district court? I think, I don't know. In this case, procedurally, posture-wise, it's somewhat unique. I don't think, I think the parties agree that this is an appeal from a single judge dismissing the indictment and would seem like an inappropriate vehicle. To the extent the court can revisit it by reversing Carter 1 and reconvening that panel, I don't know. I haven't dived in that deeply. It would seem like that would be the way to go. We maintain, for all the reasons cited in our brief, it's a very compelling case law that the district court got it right here. To the extent that my final comment, I think, goes to Mr. Billings' comment that the state proceedings went with full knowledge of what was going on with the federal proceedings, including that Mr. Carter was subject to that two-year term of supervision. So the equities here, we just disagree that they favor Mr. Carter, again, who was in jail for upwards of a state prison for upwards of three years of this delay. And with that, we ask that the court order that the original correct judgment be reinstated. Thank you. Thank you.